Good morning. We have three appeals that are scheduled for oral argument this morning. The first is the United States of America v. Everett Tripodis. Mark Campbell is here for the appellant Tripodis. Gabriel Mendel is here for the United States. And, Mr. Rick Tripodis. Your Honor, this case is about the category of Rule 11 C.1.C. plea agreements, more commonly known at the district court level as binding plea agreements. In this case, the appellant entered into a binding plea with the government that specifically provided for a term of imprisonment, for dismissal of counts, for forfeiture, restitution, and specifically the government obtained the right to argue whether a fine would be appropriate. The agreement made absolutely no provision for supervised release, yet the government argued for supervised release before the district court, and the district court imposed supervised release. Did he have an No, go ahead, please. You go ahead. Go ahead. Go ahead. Did counsel object before, object at all during that discussion? I know Mr. Tripodis objected after the sentence was imposed, but did counsel object at all during the colloquy about that? Not during the conference, no, Your Honor. You were the counsel, correct? I was, Your Honor. Okay. Objection was raised at sentencing. The objection was not raised at some point, Mr. Campbell, you specifically after the district court judge went through the sentencing options and he said there is a term of supervised release of one to three years, and he asked the government if he had any objections to the guideline calculations, and the government said, no, there is only an issue about restitution, but we are working it out. Then he gets to you, and you tell the judge, I have one other objection, and that's to the supervised release should be zero to three years. The court does not have to impose a period of supervised release, and given that he's going to be pleading to the statutory maximum of sixty months, we're going to be asking the court not to do so. You didn't tell him that the plea agreement did not allow for supervised release. You were, in essence, asking him to exercise his discretion. Well, Your Honor, that's because at that point, there had been no violation or breach of the plea agreement. At that point, there was a reasonable expectation that the terms that were in the plea agreement would be followed. Now, we understand, of course, the court did mention during the plea policy that there was a statutory maximum of three years supervised release that was available under the offense. And he had an opportunity at that point to withdraw his plea when he was advised during the plea colloquy earlier that, you know, I can tack on three years of supervised release. Do you understand that? He says, yeah, I understood that. At that point, did he have an opportunity to withdraw his plea? Your Honor, it would have been premature at that point because, naturally, the court is required during a Rule 11 plea colloquy to articulate all of the possibilities that could occur in a – with a – the sentence with a particular offense. However, it would have been premature to withdraw the plea at that point because there had been no breach or violation. Right. But in the plea – in the plea colloquy, there is an exchange between the court and yourself. And the court tries to make it very clear, do you understand that other than the 60-month sentence, if I fail to follow any recommendation of the government, you will still be bound by your plea of guilty and have no right to withdraw it? The defendant, yes, sir, I understand. He did understand at that point, Your Honor. The point was that the court said, if I don't follow the agreement that you and the government have entered into, then you'll have an opportunity to withdraw your plea. So at that point, the reasonable expectation was that the court would follow that. We had no reason to believe at the plea – But the court had said specifically multiple times that the only obligation that he was under was the 60-month sentence. Everything else was on the table. But, Judge, that would have been somewhat – that would have overlooked the agreement for restitution. That would have overlooked the agreement for the financial – But the point is, is that he could have said restitution is X. He made it very clear, the only way you get to withdraw the plea agreement is if I do anything more than 60 months. Everything else is discretionary. Judge, I think that would have been an accurate statement of the law. Well, shouldn't you have told that to the district court judge at the time instead of telling us? Judge, I believe that it was premature at that point. We had an agreement in place, and we had a reasonable expectation that the court – Well, you didn't have an agreement in place, because if you had an agreement in place, then it would be in writing. And it's not in writing, is it? The plea agreement specifically provides for several important details, and it omits a key detail. I've got a question about the actual terms of the plea agreement. What it says is the defendant and the government expressly recommend that the court should impose a sentence of 60 months of imprisonment as to count one as the appropriate total custodial sentence in this case. And then under the provisions of federal rule of criminal procedure 11C1C, this recommendation would bind the court to impose this particular custodial sentence if the court accepts this plea agreement. And then I was tuned into this part of the rules by Judge Henderson's concurrence in the D.C. Circuit. And it notes in the notes about the 1999 amendments that under, at that time, E1C agreement, the government and the defense have actually agreed on what one of the specified components. Why shouldn't we read this agreement as referencing one of the specified components rather than the total and complete sentence? Because the agreement contemplated several different issues, 60 months and restitution and dismissal of accounts and financial conditions that had to be met, such as agreeing to give a deposition to the U.S. Attorney's Office concerning his ability to pay. There were so many different conditions specifically articulated in the plea agreement. Why shouldn't we read silence as true silence rather than an implied agreement that the term of supervised release would be zero months? Because federal 11C1C plea agreements are different. The whole purpose of an 11C1C plea agreement is predictability so that a defendant who enters into one of these agreements can go into the court on the day of his sentencing and know one of two things is going to happen. He's going to either get exactly the benefit of his bargain, A, B, C, D, everything that he's agreed to, or he's going to be given an opportunity to withdraw his plea because supervised release was never contemplated in the case. The appellant in this case had no reasonable belief whatsoever that that would be part of his plea. If that's true, Mr. Campbell, then you wouldn't have asked a district court judge to give the defendant zero for supervised release. Instead, you said, again, the court does not have to impose a period of supervised release, and given that he's going to be pleading the statutory maximum of 16 months, we're going to be asking the court not to do so. Again, you never told the district court judge at the sentencing hearing that your client had bargained for and was not going to be getting any supervised  Respectfully, Your Honor, we did object to that. It's near the conclusion. You did not tell the district court judge that the plea agreement did not allow for it. Respectfully, Your Honor, I believe we raised that argument near the end of the sentencing hearing. You did not. Your client did. Correct? I was arguing on behalf of my client, Your Honor. But your client is the one that wanted to speak to the district court judge because you had no further objections. Judge, I believe that the predictability of the issue was something that was appropriate to raise at the right time. My goal was to avoid an appellate issue. My goal was to convince the court at the trial level to not impose this rather than say, Judge, there could be a breach of the plea agreement. That's the last thing that the trial court attorney wants to do is accuse anyone of breaching any kind of an agreement. So we asked the judge simply not to do it. When the judge imposed that sentence, we pointed out to the court that the agreement doesn't provide for it and we were overruled. Why couldn't we understand the terms of the plea agreement plus the discussion at the sentencing hearing to show that the parties agreed on everything except the term of supervised release and decided to negotiate that in front of the judge and let the judge make the call on that one thing, whereas the parties agreed on all these other terms of the sentence? If that were the case, then supervised release would have been treated just like the reservation of the fine issue. The plea agreement was so narrowly drawn. It contemplated so many specifically and different issues, one of them being, of course, the reservation of fine where it was made very clear there is no agreement as to this, and we're going to argue that before the court at the time of sentencing. What about how does your client get around the plea waiver? The appeal waiver, I mean. I meant the appeal waiver. It's Friday morning. The appeal waiver, Your Honor, is part of the plea agreement that the government breached by asking for supervised release when the plea agreement did not provide for it whatsoever.  We're not before the court asking to go back before the court, the district court, and the government be ordered to specifically perform. We're simply arguing that under a de novo review, the evidence shows that the government did breach its agreement. Let's say you prevail. What is your remedy? Is the remedy to go back to the district court and have the sentence recalculated? Your Honor, the remedy we request is to go back before the district court and for specific performance from the court, that the court give Mr. Tripodis, the appellant, the sentence that he bargained for. Is that what we've said before is the appropriate remedy? Yes, Your Honor. The panel of this court did say that. All right, because if it goes back and the sentence is recalculated, it's possible he could get a higher sentence, right? Well, Judge, I would ask for specific performance of the plea agreement, which would be a statutory maximum of 60 months and all the other conditions in the plea agreement. All right. I think we have your argument. Thank you, Mr. Campbell. We'll hear from the government. Good morning. May it please the Court. Gabriel Mendel for the United States. I'd like to start near where my colleague finished, where he suggested to this court that there was something before this court that was on de novo review. There is nothing before this court on de novo review. There are two issues, arguably, before this court. One is the claim of a government breach, which this court would only review for plain error because there was no suggestion at any time before the district court that the government had breached. The second issue would be the fact that the government had breached. Well, wait a minute. He did object at the end. He said, I objected. I object to the, what is it, the imposition of supervisory release at the end of the sentence, and the court said noted, right? He argued that the court sentence had violated, not that the government's recommendation had violated. It's a strange, it's a mild parsing, and it comes down to the same thing. Yeah. Even if the issue is did the court misunderstand the scope of the agreement, that's only reviewed for clear error, as this court made clear in the Al-Aryan case. Well, let me ask you this. Did he get the benefit of his bargain because it's clear that he never understood that he was going to get supervised release, right? I mean, it's clear that he understood that the government was not going to recommend supervised release. Was that in the plea agreement, that the government was going to recommend supervised release? No, Your Honor. Mr. Trapotas did not obtain a promise from the government in any way regarding supervised release, and I would suggest it is far from clear that Mr. Trapotas did not understand that. His plea colloquy made it very clear to him. Yeah, I understand the plea colloquy, but his objection is that the government he didn't get the benefit of his bargain. The government never told me they were going to ask for supervised release. That's not in my plea agreement. That's his argument. And so what I'm asking is why wouldn't he sandbag in this case? Because you asked for supervised release. That wasn't in his plea agreement. He didn't get the benefit of his bargain, did he? Your Honor, that is every promise the government made him. The government promised in paragraph 11 to recommend a custodial sentence of 60 months. The government did so. That is the only limitation that this plea agreement put up. But the plea agreement doesn't say that the government will recommend supervised release. Your Honor, I'm not familiar with plea agreements having to say that. So let's look at the two cases my colleague cited in his brief. There's one case from a panel. It's unpublished in this court, and there's an Eighth Circuit case, Gilchrist. In both of those, the promise from the government was as to a total disposition. The government will recommend this confinement, this fine, this amount of restitution. This plea agreement left everything other than 60 months in prison open, which a Rule 11 C1C plea can. There is nothing wrong with limiting the court on one part of a sentence and leaving the court with discretion in all others. What of opposing counsel's argument that things that the plea agreement intended to left open, it said so? Why shouldn't this be treated the same as those? No, Your Honor, because he obtained a promise from us that we would not recommend a specific fine. That is to his benefit that we are not going to say to the court, Your Honor, we think the fine should be X or Y. We're not going to say anything. So he has obtained our silence on the fine. The government's obligation is when you make a specific promise in a plea agreement, that's what you're bound to, whether it's a recommendation or that this is what you're going to request. I would like to go to the plea agreement, the change of plea hearing, where the court specifically went and had a colloquy with the defendant and said, do you understand that you may be sentenced to a term of supervised release and if you violate the conditions of release, you can be sent to prison for the entire term of supervised release? And the defendant said, yes, sir. Then the court said, other than the provision of the plea agreement, which gives you the right to withdraw your guilty plea, if I should sentence you to more than 60 months in prison, do you understand that if the sentence is more severe than you expect, you will still be bound by your plea of guilty and you will not have the right to withdraw it? Yes, sir. There was never any indication in the change of plea hearing or anything by Mr. Campbell or the defendant that they understood the plea agreement to be prohibiting a term of supervised release. That's correct, Your Honor. And that understanding, as the court's questions earlier have indicated, continued to sentencing because it's not only the quote that Your Honor asked about sort of at the beginning of sentencing where Mr. Chipotas' counsel corrected the court as to what the maximum or minimum could be. That was on page 10 of the transcript. If you go further, you go to page 20 of the sentencing transcript. This is after the government has stood up and asked for a term of supervised release. And Mr. Chipotas' counsel? It seems to me like, I mean, you may be right, but it seems to me like there's a difference between the two. Yes, I understand, Your Honor, that you can sentence me to a period of supervised release, but that's different than the government never told me they were going to recommend it. The government could have told the court we don't recommend supervised release. It was his understanding that, yes, I understand, Your Honor, you can sentence me to three years of supervised release. My problem is that I did not anticipate that the government was going to request it. That's not in my plea agreement. So what's true about that notion, Your Honor, is this portion of the sentencing hearing. If that is true, that when the government stood up and recommended three years of supervised release, you would have expected an objection from his counsel or from Mr. Chipotas, who felt free to speak up. And then instead, what Mr. Chipotas' counsel stands up and says is, Your Honor, we think it is in the best interest of everyone not to give him supervised release. And why? Not because it's precluded, but because, quote, he has not performed well on supervised release in the past. Again, no suggestion of the plea agreement precluded supervised release. So it would be very curious, Your Honor, if the defendant understood a term that the district court, the United States, and his counsel all understood differently, and which, again, is how this court has used that term, because we've talked a lot about what is essentially parole evidence, but really where this should start and finish is the language of the agreement, which is the only promise is as to a custodial sentence, which for decades this court has understood to mean a term of imprisonment, whereas a term of supervised release is a non-custodial sentence. There are no promises by the government of any sort in this plea agreement regarding a non-custodial sentence. It's non-custodial, but there are certain implications associated with a supervised release. His argument is, you know, I was going to serve my 60 months in prison, and then when I get out, I've served my time. And, you know, and so you're still on supervised release. You might not be able to find a job. You can't vote. You can't have a firearm. And so there are certain consequences associated with being on supervised release three years after I've served my time, I've paid my debt to society. He didn't have that understanding. That's what he's claiming on appeal, Your Honor, but that's rebutted by the plain language of the agreement, by the plea colloquy, by his counsel's behavior at sentencing, and by this court's precedent. If he wanted a promise from the government not to recommend a term of supervised release, he needed to bargain for it, he needed to be in the plea agreement. That plea agreement contains an integration clause. I understand there are no promises that are not contained in this plea agreement. And so to the extent he had that understanding, Your Honor, and it's a little hard at this point with the recidivist fraudster to know what he truly believed, that understanding was unreasonable, it was rebutted by the record, and he's shown no error that this court should reverse. If there are no more questions, we ask that the court— I do have one more question. Let's say that even you agreed that there— let's say that the plea agreement had said no supervised release, and then the court entered supervised release. How do you think he gets around the plea waiver? It's a good question, Your Honor. I think the idea that he's putting forth is that if the court breaches the plea agreement, he's not bound by it. It's almost a contractual question. It is a contractual question, and it's not a contractual question because ordinarily you would think of the parties being the government and the defendant. But in a C1C, essentially the court in a way becomes a party. By accepting it, the court is promising to abide by it as well. So to the extent the court violates that promise, it would seem— You would agree that he— it would be appropriate to figure out in that circumstance some way for a defendant to appeal if the sentence is obviously contrary to what the government was— the government had agreed to and the court was bound to accept. Absolutely. I mean, you can imagine what he's doing under egregious circumstances. Right. If he agrees three years and the court gives him five years, there has to be some form of relief. Thank you. I appreciate that concession. If the government's going to recommend supervised release, why not just put that in the plea agreement? We're going to recommend supervised release. And, Your Honor, maybe going forward we will. But you can see these plea agreements already have 20-something paragraphs. And every year we get a new case that makes us add a paragraph. The reason why we're sending these parties was we've said what we're promising to. Everything that's not in here is not in here. The purpose of an integration clause is to say— Yeah, there's a lot of other stuff. But, I mean, three years of supervised release is an important— I mean, that's an important aspect of the plea agreement. That's the most important. The sentence that you're going to get is the most important part of that plea agreement. And, Your Honor, if that was Mr. Tripodis' feeling, he should have asked the government to put in there a promise, like he did with the fine, not to recommend supervised release or to put in there that the district court can't impose it. But if he wants that promise, he— It should be—it's almost like the silence is more indicative because what he wanted to negotiate was in the plea. That's right. I'm not afraid I don't have the case in my mind. But it's in our brief that if it is not in there, the silence means there's no promise. That is the purpose of an integration clause, and it's just not here in this plea agreement. All right. Thank you, Mr. Mendo. Mr. Campbell, you've reserved some time for rebuttal. Thank you, Your Honor. Your Honor, we agree that in a traditional Rule 11 plea and sentencing proceeding, silence certainly does mean that everything is fair game. But it's important to keep in mind, this is an 11C1C plea agreement and sentencing where predictability is the most important thing so that the defendant knows exactly what's going to happen to him at the sentencing hearing unless certain things have been left open specifically. In a traditional Rule 11 plea, the government agrees to very little. Typically, it's the government agrees to dismiss some counts and to recommend the low end of the guidelines. But in a C1C plea agreement, the agreement needs to be very, very specific, top to bottom. This is provided for, other issues are not provided for, and the silence or the leaving out of certain issues means that they are not to be contemplated at all. What about on page 10 of the sentencing hearing? So you'd already had the plea colloquy. You said, Judge, I also just have one other objection, and that is that the supervised release should be zero to three years. The Court does not have to impose a period of supervised release. And given that he's going to be pleading to the statutory maximum of 60 months, we're going to be asking that the Court not do so. Why isn't that consistent with the view that the plea agreement simply didn't address supervised release? Given that the plea agreement didn't address it, we argue that it was not available. I don't read that as saying it's not available. I read that as saying you have this range of options, but we're asking you to not impose supervised release. Your Honor, as I mentioned earlier, the goal at the trial level, of course, is to avoid appellate issues. The goal at the trial level was to say, Your Honor, let's resolve it this way without having to accuse anyone of breaching the agreement. Right, but the point of the plea agreement, and that's why it's important for everything to be in writing, if you're asking the government to do X, in order for there to be a breach, they have to know, and we have to know, what they're breaching. So if the plea agreement said, the government will not recommend a term of supervised release, and then the government's counsel gets up and says, we're going to make a recommendation for a term of supervised release, that's a clear breach of the plea agreement because it's in writing. So the issue I'm having is the silence of the plea agreement when there are so many other issues that were defined in the plea agreement about what the government was going to be recommending. That's the whole point. The government, specifically, they make recommendations and they agree to sort of deviate from the norm, and that's the point of the plea agreement. Well, Judge, that's exactly why a Rule 11C1C plea agreement is different. If this was a traditional Rule 11 plea agreement where none of the explicit terms had been discussed, and more importantly, none of them are binding on the court, then silence would certainly be very relevant here. But because an 11C1C plea agreement is necessarily for the purpose of predictability, the government should be held, as the drafters of this agreement, they should be held the ones responsible for ensuring that every term they want to argue for or agree to give up is contained therein. And because, Judge, in my opinion, this plea agreement can be read as ambiguous, and if so, then it's construed against the government as the drafters of it. They are the ones that made sure to include every single term that they wanted to include in here. And let me point out my colleague reasonably noted that there is an integration clause at the end of the agreement. I believe that inures to the benefit of the appellant's argument because the fact is there were no other agreements, there were no other considerations, and the absence of supervised release being discussed in there means that it was not contemplated. Well, it means that there wasn't an agreement about supervised release is how I would read that. I understand, Your Honor. We believe that because it's a C1C plea agreement, those rules are tighter. Predictability is the essential rule here, and that the integration clause means if it was not contemplated in the agreement, it was not contemplated. And that is why it's important to look at what did Mr. Tripodis reasonably expect when he went into that sentencing. He reasonably expected that he would receive a prison sentence and that he would receive dismissal of counsel and other specific details, but that he would not get supervised release. All right. We have your arguments. Thank you, counsel. And, Mr. Campbell, I note that we note that you were appointed to represent Mr. Tripodis for this appeal, and the court thanks you for your service. Thank you, Your Honor.